KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP, ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183
jp@kemp-attorneys.com
Attorney for Plaintiff CHRISTOPHER P. BURKE, TRUSTEE

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * *

| | |
|---|---|
| CHRISTOPHER P. BURKE, in his capacity as Bankruptcy Trustee for the Bankruptcy Estate of ALIX ANGELA MARTINEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CAESARS ENTERTAINMENT, INC., a Delaware Corporation.<br><br>Defendants. | Case No.:  3:21−cv−00194<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

COMES NOW THE PLAINTIFF, by and through Counsel of Record, JAMES P. KEMP, ESQ., of the law firm of KEMP & KEMP, ATTORNEYS AT LAW, and for a cause of action does hereby state and allege as follows:

**JURISDICTION AND VENUE**

The Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 in that it arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, and has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over related state claims alleged herein.  Venue is proper in the unofficial Northern Division of the Court in that all of the material events complained of herein took place in Wahsoe County, Nevada.

**ALLEGATIONS COMMON TO ALL COUNTS**

1. The acts complained of herein occurred in Washoe County Nevada.

1

2. CHRISTOPHER P. BURKE (herein Plaintiff) is and was at all relevant times mentioned herein the duly appointed Chapter 7 Bankruptcy Trustee for the Bankruptcy Estate of ALIX ANGELA MARTINEZ (herein "Ms. Martinez") in case # 19-51379-btb in the Bankruptcy Court for the District of Nevada. Upon the filing of the aforementioned bankruptcy case the claims of Ms. Martinez against her former employer passed by operation of law into her bankruptcy estate under 11 U.S.C. § 541 which is administered by Plaintiff and Plaintiff is authorized and charged with pursuing these claims as property of the bankruptcy estate under 11 U.S.C. § 323 and other law.

3. Defendant CAESARS ENTERTAINMENT, INC. is a Delaware Corporation authorized to conduct business under the laws of the State of Nevada and having continuous and ongoing business operations in Washoe County, Nevada. Defendant is the successor in interest to the relevant former employer(s) of Ms. Martinez following the merger of Ms. Martinez's former employer entity or entities and the prior Caesars Entertainment entity or entities which was completed in approximately July 2020. The Defendant will sometimes herein be referred to as "the Corporate Defendants" and this is to account for the integrated enterprise of all entities and operations under Caesars Entertainment, Inc. and the integrated enterprise is liable for all claims set forth herein.

4. The Corporate Defendants have continuously been engaged in commerce as employers and were the employers of Ms. Martinez under the relevant sections of the Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disabilities Act of 1991, as amended, and the Family and Medical Leave Act of 1993. These Defendants operate as an integrated enterprise with one another as that term is defined and applied by the U.S. Equal Employment Opportunity Commission and the U.S. Department of Labor.

5. From approximately November 15, 2015 through November 10, 2017, Ms. Martinez was

employed by Corporate Defendants as Director of Sales until November 1, 2017 at which time she was demoted to a National Sales Manager position, only to be fired nine days later. At the time of her termination Ms. Martinez was earning a base salary of approximately $86,000 and with bonuses her total income from the job was in the neighborhood of $100,000 per year.

6. Prior to March 15, 2017 Ms. Martinez had been in a consensual intimate and sexual relationship with Don Goodman.

7. In approximately March 2017 Goodman became an Executive Director of Sales for Corporate Defendants.

8. When Goodman became the Executive Director of Sales for Corporate Defendants he was in the direct chain of command of Ms. Martinez, her supervisor's immediate supervisor, and was in a supervisory role over her employment with the authority to effectuate or strongly influence the termination of her employment.

9. Goodman was also in a direct supervisory role to Meg Kennedy, the Director of Convention Sales who was the immediate supervisor of Ms. Martinez.

10. In approximately March or April 2017 Ms. Martinez informed Goodman that she was breaking of any intimate or sexual relationship with him. She had become uncomfortable with the relationship particularly now that Goodman was her workplace superior. She informed Goodman that she was going to work on reconciling with the father of her child. Goodman initially said this was a good idea and he told Ms. Martinez that he was worried about her working under him because of their prior relationship and the position that it put him in as her boss. Ms. Martinez, from that point forward believed that Goodman would try to get her out of the company. Goodman told her that he was on a three year employment contract and having her around, given their history of having the affair, was detrimental to his career. It seemed to Ms. Martinez that Goodman was uncomfortable having her working there because it would hurt

3

him if the fact of the affair got out. Ms. Martinez believes that the affair was common knowledge in the workplace, or at least that many people there suspected it.

11. Despite his statement that he was accepting of Ms. Martinez breaking off the relationship with him, and despite his apparent misgivings about having her in the workplace, Goodman continued to pursue Ms. Martinez sexually for several months, indeed until a short time before he fired her on November 10, 2017.

12. Goodman's sexual pursuit included his continual maneuvering to place himself into situations where he would be alone with Ms. Martinez. Once he managed to get into situations where he was alone with Ms. Martinez he would attempt to seduce her into sexual relations with him by, among other things, emphasizing the fact that his wife was not home or out of town, lament to Ms. Martinez that his wife and he were not having sexual relations, and otherwise expressly or implicitly attempting to have his subordinate, Ms. Martinez to have sex with him.

13. On one occasion in approximately May of 2017 Goodman had Ms. Martinez alone in a hotel suite, where he was ostensibly giving her a work-related tour of the facilities. As Ms. Martinez went to open the door to leave the room Goodman placed his hand on the door and leaned his weight onto it and prevented her from leaving. He then asked to see her breast.

14. Goodman continued to speak to Ms. Martinez in ways that hinted that he wanted to resume the sexual relationship with her. He would invite her over to his house to "hang out" while Goodman's wife was away. On one occasion in Ms. Martinez's office Goodman kissed her.

15. Ms. Martinez repeatedly refused Goodman's sexual advances, but they continued throughout the summer and into the fall of 2017.

16. Finally, in October 2017, Ms. Martinez firmly and conclusively told Goodman that the sexual relationship was over, she was getting back together with the father of her child, and that he needed to stop his advances.

4

17. Promptly after Ms. Martinez gave this final rejection of his sexual advances, Goodman effectuated the demotion of Ms. Martinez from Director of Sales to a National Sales Manager job on November 1, 2017. This was retaliation for her refusal of his sexual advances. When she was demoted on November 1, 2017 her immediate supervisor changed from Meg Kennedy to Kara Duncan, but Duncan was only her supervisor for a little over a week, much of which time Ms. Martinez was on a business trip. It appears that it was Goodman who made the decision and fired Ms. Martinez.

18. When the demotion did not coerce Ms. Martinez into either quitting or continuing the sexual relationship with Goodman, he effectuated her termination from employment nine days later on November 10, 2017.

19. Goodman sexually harassed Ms. Martinez. The sexual harassment was severe or pervasive. It was subjectively and objectively offensive. It was committed by Plaintiff's manager or supervisor, Don Goodman.

20. Ms. Martinez suffered her demotion on November 1, 2017 and her termination on November 10, 2017, both of which were tangible adverse employment actions by Corporate Defendants that were a culmination of the sexual harassment and hostile work environment that Goodman engaged in and created in his role, and using his authority, as Ms. Martinez's superior.

21. The reasons given by Corporate Defendants for Ms. Martinez's termination were false and pre-textual. The real reasons are discrimination based on sex and/or disability, retaliation for Ms. Martinez's opposition to illegal sexual harassment conduct imposed on her in Corporate Defendants' workplace by her superiors. The temporal proximity between Ms. Martinez's protected activity and the demotion and subsequent termination of her employment was mere days and this is strong circumstantial evidence of the discriminatory and/or retaliatory motive and animus that was the actual reason for terminating Ms. Martinez's employment.

22. As an executive of Corporate Defendants, Goodman held a position of authority over Plaintiff. He was in a position to be able to discipline Ms. Martinez and either did have authority to fire her or would have the ability to strongly influence the decision makers and secure her firing if he chose to do so. Upon information and belief it was in fact Goodman's decision to fire Ms. Martinez from her job on November 10, 2017.

23. Corporate Defendants' actions were done maliciously, deliberately and to cause Ms. Martinez to suffer disgrace, harassment, intimidation, emotional and mental distress, anguish and suffering. Ms. Martinez was diagnosed with anxiety and depression after she was fired and was placed on medication to treat these conditions by medical providers.

24. Ms. Martinez was well qualified for her job and, but for the actions of the Defendant, performed her job to the best of her ability and in a reasonable and satisfactory manner.

25. The harassing behavior suffered by Ms. Martinez at the hands of Goodman was unwelcome. It was severe or pervasive based upon the content and the months of time that it continued for. The harassing behavior had an adverse impact on and impeded Ms. Martinez in the performance of her job. The harassing behavior was both objectively offensive and subjectively offensive to the Ms. Martinez in that it consisted of persistent and strongly coercive attempts to manipulate the Ms. Martinez into an illicit and/or adulterous extramarital sexual relationship against her wishes.

26. Ms. Martinez suffered the loss of her livelihood and lost wages, and other benefits of her employment.

27. Ms. Martinez suffered deliberate and malicious harm to her professional reputation inflicted by the Corporate Defendants. Ms. Martinez was sexually harassed and when this was brought to the attention of the Corporate Defendants they instructed longtime friends and co-workers to refrain from talking to her, told their employees that Ms. Martinez was lying and implied that if

they knew what was best for them they would not have anything to do with her. This is extreme and outrageous retaliation for Ms. Martinez coming forth and speaking the truth about sexual harassment in the workplace that she suffered at the hands of an executive of Corporate Defendants.

28. Corporate Defendants are liable for the actions of Goodman directly because of his position as an executive and/or on the basis of *respondeat superior* or principles of agency.

29. Ms. Martinez timely filed charges of discrimination and retaliation on the basis of disability and sex with the Nevada Equal Rights Commission (NERC) and the United States Equal Employment Opportunity Commission (EEOC), Charge No. 34B-2018-00284 on April 6, 2018, the contents of which, including any and all pertinent amendments, are incorporated herein by reference.

30. On October 29, 2019 NERC issued a Right to Sue Notice. On November 18, 2019 EEOC issued its Notice of Suit Rights.

31. All administrative prerequisites have been exhausted and satisfied.

32. On November 26, 2019 Ms. Martinez, as a result of the economic harm done to her by the termination of her employment by Corporate Defendants and the extensive harm to her professional reputation maliciously perpetrated by Corporate Defendants, was forced to file for Chapter 7 bankruptcy protection as noted above. All statutes of limitations on all claims that Plaintiff brings in this action were tolled until two years after the date that Ms. Martinez's bankruptcy petition was filed and the order for relief was entered in accordance with 11 U.S.C. § 108 (a). This action was timely filed.

33. Plaintiff has been required to hire legal counsel and incur legal fees and costs in pursuit of the vindication of Ms. Martinez's rights under the law.

7

# FIRST CLAIM: DISCRIMINATION AND/OR HARASSMENT BASED UPON SEX UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS AMENDED

All other paragraphs in this complaint are incorporated and re-alleged here by this reference as though they were fully set forth.

34. The Defendant, by and through managers and supervisors, engaged in a series of deliberate acts designed and intended to harass Ms. Martinez and cause her emotional distress. This harassment created a hostile work environment in the Ms. Martinez's workplace.

35. These acts included, but were not limited to, invading Ms. Martinez's personal life, asking for personal and private information, and repeatedly propositioning Ms. Martinez for sexual relations even after her obvious refusals and rebuffs of the executive's advances.

36. The Corporate Defendants' words, acts, and deeds, by and through executive Don Goodman, were discriminatory and constituted harassment in the workplace based upon Ms. Martinez's female sex or gender. Male co-workers were not treated in the same manner by Goodman.

37. The Corporate Defendants' words, acts, and deeds were severe or pervasive and would be considered highly offensive to a reasonable person under the circumstances and were considered highly offensive to Ms. Martinez.

38. The Defendants' offensive words, acts, and deeds were intended to vex, annoy, and harass Ms. Martinez and were intended to inflict, or were made with reckless disregard for whether they would inflict emotional distress and mental anguish on Ms. Martinez.

39. As a direct and proximate result of the Corporate Defendants' offensive words, acts, and deeds, Ms. Martinez did suffer emotional distress and mental anguish.

40. The discrimination, harassment, and offensive words, acts, and deeds adversely impacted the Ms. Martinez's ability to perform her work and caused Ms. Martinez to suffer adverse

8

employment action, including but not limited to her demotion and her discharge, and harmed Ms. Martinez in the terms and conditions of her employment causing her economic harm, lost wages, special and general damages, as well as non-economic damages in an amount to be proven at trial.

41. The harassment by the Defendants was a violation of The Civil Rights Act of 1964 as amended, 42 USC § 2000e et seq. The Plaintiff is entitled to all remedies provided by 42 USC § 2000e-5, NRS 613.432, and any other applicable law.

42. The offensive words, acts, and deeds of the Corporate Defendants' were made with willful malice, fraud, and oppression.

43. The Corporate Defendants should be assessed punitive and/or exemplary damages to punish it and make it an example to deter the same or similar conduct by the Defendant and/or other employers that might engage in such severe or pervasive harassing conduct.

## SECOND CLAIM: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

All other paragraphs in this complaint are incorporated and re-alleged here by this reference as though they were fully set forth.

44. In March and October 2017 Ms. Martinez engaged in protected activity in making a complaint of sexual harassment in the workplace against her superior Don Goodman. Ms. Martinez opposed the sexual harassment that she had suffered. This complaint was made to her superior Don Goodman, a person to whom such complaints could properly be made under Corporate Defendants' policies and procedures.

45. Ms. Martinez was the victim of sexual harassment.

9

46. On November 1, 2017 Corporate Defendants demoted Ms. Martinez's employment in retaliation for her opposition to her being sexually harassed in violation of Title VII of the Civil Rights Act of 1964 as amended.

47. On November 9, 2017 Corporate Defendants terminated Ms. Martinez's employment in retaliation for her opposition to her being sexually harassed in violation of Title VII of the Civil Rights Act of 1964 as amended.

48. Corporate Defendants terminated Ms. Martinez's employment in retaliation for her opposition to illegal sexual harassment. Corporate Defendants fabricated false and pretextual grounds for the demotion and subsequent termination in an attempt to cover up and escape from the consequences of executive Don Goodman's sexual harassment of Ms. Martinez. To be more specific, the Corporate Defendants retaliated against the Ms. Martinez for implicating the executive Goodman. Corporate Defendants retaliated and fired the Ms. Martinez on false and defamatory accusations against her in order to avoid having to continue the to employ Ms. Martinez where she could possibly demand better treatment to compensate for the sexual harassment and would always pose a threat to the Corporate Defendants that she might complain about being sexually harassed in violation of Title VII of the Civil Rights Act of 1964 as amended. In other words the Defendants fired the sexual harassment victim so that she would not "have them over a barrel." This is retaliation.

49. After Ms. Martinez brought the sexual harassment to the attention of Goodman's superiors, the Corporate Defendants retaliated against her by accusing her of making false reports and lying and telling people that she had worked with and knew for years to not have anything to do with her. This was extremely upsetting and it aggravated the anxiety and depression that Ms. Martinez was suffering as a direct and proximate result of the sexual harassment and discrimination based on sex and disability that she was subjected to.

50. Corporate Defendants had no legitimate justification to terminate Ms. Martinez's employment. In the meeting held with Goodman and Human Resources representative Karen Goforth when she was fired on November 10, 2017, Ms. Martine was told that there was nothing wrong with her performance, only that she "was not a good fit."

51. The Corporate Defendants' conduct was of a type and nature that would tend to intimidate and discourage other employees from stepping forward to oppose unlawful discrimination conduct or to pursue filing charges of discrimination or otherwise engage in activity protected by Title VII of the Civil Rights Act of 1964.

52. Corporate Defendants' conduct resulted in actual harm and damages to Ms. Martinez when she was fired for having complained about the sexual harassment to which she was subjected by the Corporate Defendants' executive manager.

53. The Corporate Defendants' acts were done with malice, oppression, fraud (express or implied), and/or willful intent to injure Ms. Martinez and/or intentionally, knowingly, or with reckless disregard for, violating Ms. Martinez's rights under federal law.

**THIRD CLAIM: DISCRIMINATION AND/OR HARASSMENT BASED UPON SEX UNDER NRS 613.330**

All other paragraphs in this complaint are incorporated and re-alleged here by this reference as though they were fully set forth.

54. Ms. Martinez was discriminated against and sexually harassed under NRS 613.330 which is construed and applied identically with Title VII of the Civil Rights Act of 1964. See *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 673 P.2d 490 (1983); *Apeceche v. White Pine Co.*, 96 Nev. 723, 615

P.2d 975 (1980).

55. Plaintiff is entitled to the same remedies as those available under Title VII pursuant to NRS 613.432.

### FOURTH CLAIM: RETALIATION IN VIOLATION OF NRS 613.340

All other paragraphs in this complaint are incorporated and re-alleged here by this reference as though they were fully set forth.

56. Ms. Martinez was retaliated against for opposing discrimination and sexual harassment which is protected conduct because such discrimination and sexual harassment is unlawful under NRS 613.330.

57. This constitutes retaliation in violation of NRS 613.340 which is construed and applied identically with Title VII of the Civil Rights Act of 1964. See *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 673 P.2d 490 (1983); *Apeceche v. White Pine Co.*, 96 Nev. 723, 615 P.2d 975 (1980).

58. Ms. Martinez was also retaliated against for opposing disability discrimination made unlawful under NRS 613.330 and that retaliation is also actionable under NRS 613.340.

59. Plaintiff is entitled to the same remedies as those available under Title VII pursuant to NRS 613.432.

### FIFTH CLAIM: DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1991 AS AMENDED

All other paragraphs in this complaint are incorporated and re-alleged here by this reference as though they were fully set forth.

60. Ms. Martinez is, and was during the relevant time period mentioned herein, a qualified person with a disability as defined under the ADAAA. She has, and/or had, a physical condition that impacts one or more major life activities including, but not limited to working, working without occasional leave, limited use of her arm, debilitating fatigue that kept her from many normal activities. The condition also affected her internal organs and her major bodily functions.

61. At all times mentioned herein and relevant to this action Ms. Martinez was able to perform all of the essential functions of her job with or without a reasonable accommodation.

62. Ms. Martinez requested one or more reasonable accommodations, including alterations to her schedule and periodic leaves of absence to treat her disability and receive medical care. These requests were supported by doctor notes. The doctor notes were ignored by Corporate Defendants. These types of accommodations are set forth in statutes, regulations, and EEOC publications as being reasonable accommodations. Corporate Defendants refused to provide Ms. Martinez with any reasonable accommodation, in fact refused to excuse her needed absences and held them against her, in fact refused to engage in a good faith interactive process as required by law, and instead actually changed her schedule to make her situation harder and cited her disability as a reason for her termination.

63. The real reason for Corporate Defendants' termination of Ms. Martinez's employment was disability discrimination. Specifically, on November 10, 2017, just after Don Goodman fired her with the HR Director (the HR Director in the termination meeting gave the only reason for termination being that Ms. Martinez "was not a good fit" in the organization and stated that her performance was not a problem), Goodman was in Ms. Martinez's office watching her pack and clean out her office and he specifically told Ms. Martinez that she was let go because "your disability got in the way of your job" or words to that effect. This is direct evidence of intentional illegal discrimination in violation of the ADAAA.

64. Ms. Martinez was qualified for her job and capable of performing the essential functions of the job with or without a reasonable accommodation.

65. Ms. Martinez was regarded as being disabled by the Defendant.

66. Ms. Martinez was fired based on, in whole or in part, discrimination against her due to her disability.

13

67. Ms. Martinez posed no direct threat to the health or safety of others in the workplace.

68. Providing Ms. Martinez with the necessary reasonable accommodation imposed no undue hardship on the Defendant.

69. Defendant's acts constituted discrimination against Ms. Martinez with respect to her compensation, benefits, terms, conditions, or privileges of employment because of her disability in violation of the Americans with Disabilities Act as amended effective January 2009 (herein sometimes referred to as "the ADAAA).

70. Ms. Martinez suffered general damages including, but not limited to, mental anguish, humiliation, damage to her professional reputation, embarrassment, and emotional distress as a direct and proximate result of Defendant's actions.

71. Ms. Martinez has suffered specific and general damages as a direct and proximate result of the actions of the Defendant.

72. Ms. Martinez has suffered and will suffer lost wages and benefits of employment as a direct and proximate result of the actions of the Defendant.

73. Ms. Martinez and Plaintiff are entitled to all remedies available for a violation of the ADAAA including, but not limited to, money damages, lost wages and benefits, reinstatement or front pay in lieu of reinstatement, and equitable relief as determined by the court.

74. Ms. Martinez and Plaintiff have been required to hire an attorney and expend fees and costs to pursue her rights through this action and is entitled to be reimbursed or have these costs and fees paid by Defendants.

75. The actions of the Defendants were willful, malicious, oppressive, and calculated to discourage Ms. Martinez and other of Defendants' employees from pursuing their rights under Federal and Nevada law.  The Defendants acted with knowledge, conscious disregard, or deliberate indifference to Ms. Martinez's rights under the ADAAA.  The Defendants

should be subjected to Punitive and Exemplary damages to punish Defendants and to deter future conduct of this sort. Defendants' acts were done with malice and oppression and with Defendant's conscious disregard for the rights of Ms. Martinez and with a certainty of knowledge that Ms. Martinez would be injured by Defendants' acts in violation of the ADAAA.

76. Ms. Martinez suffered damages.

77. The Plaintiff should be granted equitable and extraordinary relief in the form of an injunction, writ, or decree ordering Ms. Martinez to be reinstated to her position with a restoration of all employment benefits and seniority, or should be awarded front pay in lieu of reinstatement.

**SIXTH CLAIM: VIOLATION OF FAMILY AND MEDICAL LEAVE ACT OF 1993**

All other paragraphs in this complaint are incorporated and re-alleged here by this reference as though they were fully set forth.

78. Corporate Defendants all operate in interstate commerce and have over 50 employees within a 75 mile radius of the location where Ms. Martinez was employed in Washoe County, Nevada. Therefore, Defendants are a "covered employer," as defined at 29 U.S.C. § 2611(4), under the Family and Medical Leave Act 29 U.S.C. §§ 2611-2654 and subject to all provisions stated therein.

79. As a "covered employer" under the FMLA, Defendants are required to offer any "eligible employee," as defined at 29 U.S.C. § 2611(2), up to 12 weeks of leave for of absence "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

80. Ms. Martinez was an "eligible employee," entitled to the protections of the FMLA having worked for Defendants over 1250 hours during the preceding 12 months and having been

employed for more than one year when her need for leave arose.

81. Ms. Martinez was qualified to obtain leave under the FMLA in that she had a serious health condition. Specifically, he had an illness that required her to be off work for more than three days and/or the need for ongoing medical treatment for the requisite period of time.

82. Ms. Martinez provided Defendants notice of her need for leave or intermittent time off by the furnishing a doctor's note to Defendants, or Defendants' duly authorized agent(s), such that Defendants received sufficient notice to trigger its responsibility to provide leave under the FMLA.

83. Defendants were fully aware and were informed by Ms. Martinez of her need to have time off because of her disability/serious health condition and to address its effects with time off to rest and for medical appointments. Defendants were squarely on notice and failed and refused to provide Ms. Martinez with proper notice and advise her of her right to take FMLA leave as required by the Department of Labor regulations governing FMLA compliance. By failing and refusing to advise Ms. Martinez of her rights under the FMLA, and by refusing to provide a leave of absence under the FMLA, and by terminating Ms. Martinez on November 10, 2017 while alleging that her attendance was deficient when she was seeking leave that would have qualified for protection under the FMLA, Defendants violated 29 U.S.C. § 2615(a)(1) by unlawfully interfering with, denying, or restraining Ms. Martinez's right to medical leave under the FMLA. This would include interference with Ms. Martinez's future need for leave or intermittent leave under the FMLA.

84. By taking the adverse employment action of terminating Ms. Martinez's employment on November 10, 2017, the Defendants retaliated and discriminated against Ms. Martinez because she requested leave that would have been covered under the FMLA for her own serious health condition that arose from her disability and illness.

16

85. Defendants' violations of the FMLA were willful and without justification.

86. Defendants' acts were done with malice and oppression and with Defendant's conscious disregard for the rights of Ms. Martinez and with a certainty of knowledge that Ms. Martinez would be injured by Defendants' acts in violation of the FMLA.

87. Defendant is liable to Plaintiff for violating Ms. Martinez' rights under the FMLA.

88. Plaintiff has been damaged in an amount to be proven at trial.

89. Plaintiff is entitled to all remedies available under the FMLA and hereby claims entitlement to all appropriate remedies pursuant to 29 U.S.C. § 2617 (a)(1)(A) and (B) including, but not limited to, the following: money damages for lost wages and benefits and any other actual money damages caused by Defendants' violation of the FMLA; liquidated damages as provided for under the FMLA; interest as provided for under the FMLA and other law; equitable and/or injunctive relief including employment, reinstatement, and/or promotion for Ms. Martinez as provided for by the FMLA and/or front pay in lieu of employment or reinstatement.

90. Plaintiff is entitled to recover costs and reasonable attorney fees pursuant to 29 U.S.C. § 2617(a)(3) for having to incur costs and fees associated with the exercise of his legal rights and remedies through this action.

91. To the extent applicable all of the allegations and claims set forth herein are pled in accordance with FRCP Rule 8(d) which states in pertinent part as follows:

> (2) *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

17

**WHEREFORE,** Plaintiff prays judgment as follows:

1. For actual money damages;

2. For general and compensatory damages in an amount to be determined by the jury at trial;

3. For appropriate punitive damages in an amount to be determined by the jury at trial;

4. For reasonable attorneys fees pursuant to statutes and/or court rules;

5. For costs of action;

6. For equitable or extraordinary relief in the form of an injunction or order requiring the employer defendant(s) to reinstate the Alix Martinez to the position that she held with no loss of seniority and with all benefits of employment to which she would have been entitled if not for the illegal and tortious termination of her employment, or for front pay in lieu of reinstatement should the court determine that reinstatement would not be feasible;

7. For trial by jury of all issues that may be tried by a jury;

8. For all other cognizable and appropriate relief under Title VII of The Civil Rights Act of 1964 as amended, NRS Chapter 613, or other applicable law;

9. For all other cognizable and appropriate relief under The Americans with Disabilities Act of 1990 as amended, NRS Chapter 613, or other applicable law;

10. For all other cognizable and appropriate relief under the Family and Medical Leave Act of 1993 including liquidated damages;

11. In the alternative to actual damage, nominal damages.

///

///

///

18

12. For such other and further relief as the court may deem just and proper.

DATED      April 26, 2021

        /s/ James P. Kemp
JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP
7435 W. Azure Drive, Suite 110
Las Vegas, NV  89130
(702) 258-1183
Attorney for Plaintiff CHRISTOPHER P. BURKE, TRUSTEE

19